UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ritchie Special Credit Investments, Ltd., et al.,

    Appellants,

v.                                     **MEMORANDUM OPINION
AND ORDER**
Civil No.  09-680 ADM

U.S. Trustee, et al.,

    Appellees,

---

James M. Jorissen, Esq., and Brian F. Leonard, Esq., Leonard, O'Brien, Spencer, Gayle & Sayre, Ltd., Minneapolis, MN; Bryan Krakauer, Esq., Thomas K. Cauley, Jr., Esq., and Brian A. McAleenan, Esq., Sidley Austin, LLP, Chicago, IL, on behalf of Appellants Ritchie Capital Management, LLC, Ritchie Special Credit Investments, Ltd., Rhone Holdings II. Ltd., Yorkville Investment I, LLC, and Ritchie Capital Structure Arbitrage Trading, Ltd.

Michael E. Ridgeway, Esq., and Assistant U.S. Trustee Robert B. Raschke, Office of the U.S. Trustee, Minneapolis, MN; Ramona D. Elliot, Esq., P. Matthew Sutko, Esq., and Walter W. Theus, Jr., Esq., Executive Office for U.S. Trustees, Washington, DC, on behalf of Appellee U.S. Trustee Habbo G. Fokkena.

David E. Runck, Esq., Connie A. Lahn, Esq., and Lara O. Glaesman, Esq., Fafinski Mark & Johnson, PA, Eden Prairie, MN, on behalf of Appellee Official Committee of Unsecured Creditors.

---

## I.  INTRODUCTION

This is an appeal from a bankruptcy court order [Bankr. D. Minn. 08-45257 ("Petters Bankr.") Docket No. 153] ("the Trustee Order") overruling the objection [Petters Bankr. Docket No. 117] of Appellants Ritchie Capital Management, L.L.C., Ritchie Special Credit Investments, Ltd., Rhone Holdings II. Ltd, Yorkville Investment I, L.L.C., and Ritchie Capital Structure Arbitrage Trading, Ltd., (collectively "Ritchie") to the United States Trustee's ("U.S. Trustee")

appointment [Petters Bankr. Docket No. 114] of Douglas A. Kelley, Esq. ("Kelley") as Chapter 11 trustee for each of the debtors in these jointly administered bankruptcy cases ("the Petters Debtors").[1]

These Chapter 11 bankruptcy cases were filed by Kelley, who at the time of the filings was serving as the court-appointed receiver for the Petters Debtors. Kelley was later appointed by the U. S. Trustee to serve as the Chapter 11 trustee for the Petters Debtors. Ritchie objected to the appointment, arguing that conflicts of interest disqualified Kelley from serving as Chapter 11 trustee. Ritchie alleged conflicts of interest at two levels: first, between Kelley's roles as receiver and trustee, and second, between Kelley's roles as trustee for PCI and trustee for PGW.

## II. BACKGROUND

The procedural and factual background set forth in the bankruptcy court's Trustee Order is incorporated by reference for review of this appeal. A brief overview is helpful for the purposes of this decision.

### A. The Civil Receivership Case

In October, 2008, the United States Attorney ("the Government") brought a civil action in this Court against Thomas J. Petters ("Petters"), several of his business associates, and PCI and PGW, which were established and wholly owned by Petters.[2] U.S. v. Petters, Case No. 08-

---

[1] The Petters Debtors whose Chapter 11 cases are being jointly administered include Petters Company, Inc. ("PCI") (08-bk-45257); Petters Group Worldwide, LLC ("PGW") (08-bk-45258); PC Funding, LLC (08-45326); Thousand Lakes, LLC (08-45327); SPF Funding, LLC (08-bk-45328); PL Ltd., Inc. (08-bk-45329); Edge One LLC (08-bk-45330); MGC Finance, Inc. (08-bk-45331); PAC Funding, LLC (08-bk-45371); and Palm Beach Finance Holdings, Inc. (08-bk-45392).

[2] Debtor Palm Beach Finance Holdings, Inc. is also wholly owned by Petters. Trustee Order at 12. The remaining Petters Debtors are subsidiaries of PCI. Id.

cv-5348 (ADM-JSM) ("Petters Civil").  The civil complaint [Petters Civil Docket No. 1] alleged a massive Ponzi scheme that generated over three billion dollars in fraudulent proceeds.  The Government sought to freeze the defendants' assets under the authority of the Anti-Fraud Injunction Statute, 18 U.S.C. § 1354, to preserve the assets for victim restitution and potential forfeiture.  This Court issued a Temporary Restraining Order [Petters Civil Docket No. 6] "essentially freezing all of the assets of PCI, PGW, and all related entities owned or controlled by them."[3]  Trustee Order at 7.

Shortly thereafter, this Court approved a stipulated Preliminary Injunction that maintained the asset freeze over PCI and PGW, as well as their subsidiaries, affiliates, or entities wholly owned or controlled by them.  Order for Entry of Prelim. Inj., Oct. 6, 2008 [Petters Civil Docket No. 12] at 4.  The frozen assets were placed into receivership ("the Receivership") and Kelley was appointed to serve as receiver.  Id. at 5,9.  The scope of the Receivership and Kelley's duties and authority are specified in this Court's December 8, 2008 Order [Petters Civil Docket No. 127] ("the Receivership Order").

Very shortly after the Receivership was established, Ritchie brought a motion to intervene in the civil action [Petters Civil Docket No. 14], stating that an Illinois state court had previously appointed a receiver for PCI and PGW.  The appointment had been made at the request of Ritchie and in conjunction with a lawsuit Ritchie had filed in Illinois alleging that Petters, PGW, and PCI had defaulted on promissory notes held by Ritchie in an amount exceeding $220 million. Mem. in Support of First Emergency Mot. to Intervene [Petters Civil Docket No. 15], Ex. 7 (Illinois Complaint) ¶¶ 2, 4.  The Illinois complaint further alleged that

---

[3] The asset freeze covered additional entities and individuals not relevant to this decision.

Petters, PGW and PCI fraudulently induced Ritchie to sign note purchase agreements and extend the due dates of those Agreements by falsely representing that PCI was a successful, viable business for the purchase and resale of merchandise. Id. at ¶ 22. Absent those representations, Ritchie would not have signed the note purchase agreements and would not have purchased promissory notes from Petters, PGW, and PCI in February 2008 and May 2008. Id. Similarly, Ritchie would not have agreed to extend the notes in the absence of Petters, PGW, and PCI's false representations regarding PCI, and their failure to disclose "that PCI was involved in a 'Ponzi scheme' that used funds obtained from new investors to pay off prior creditors." Id. at ¶ 24. Ritchie described itself as "'last in to what the participants in the fraud called a 'Ponzi scheme,' meaning that [Ritchie's] funds likely were used to pay prior creditors in hopes of perpetuating the scheme." Id. at ¶ 23.

This Court denied Ritchie's motion, [Petters Civil Docket No. 41], and Kelley remains the receiver in the civil case.

### B. The Criminal Case

Contemporaneous with the civil case, the Government also filed a criminal case against Petters, PGW, and PCI. See U.S. v. Petters, Case No. 08-cr-00364 (RHK-AJB) (D. Minn.) ("Petters Criminal"). On December 1, 2008, a federal grand jury indicted Petters, PCI, and PGW on charges of mail fraud, wire fraud, conspiracy to commit mail fraud and wire fraud, money laundering, and conspiracy to commit money laundering. [Petters Criminal Docket No. 79] ("Indictment"). A superseding indictment was issued on June 3, 2009. [Petters Criminal Docket No. 196] ("Superseding Indictment"). Both indictments include forfeiture counts seeking forfeiture of property involved in or traceable to the offenses or, if the forfeitable property is

4

unavailable, the defendants' substitute property. Indictment at 12-13; Superseding Indictment at 12-16.

### C. The Bankruptcy Cases

As receiver and as authorized in the Receivership Order,[4] Kelley filed Chapter 11 bankruptcy petitions for the Petters Debtors during October, 2008. [Petters Bankr. Docket No. 1]. The bankruptcy court authorized joint administration of the Petters Debtors' bankruptcy cases. [Petters Bankr. Docket No. 21]. Because the Petters Debtors' management had resigned prior to the bankruptcy filings, Kelley served as the *de facto* debtor-in-possession. In December, 2008, the U.S. Trustee and Ritchie each brought a motion for the appointment of a Chapter 11 trustee or trustees[5] for the Petters Debtors. The bankruptcy court issued an Order [Petters Bankr. Docket No. 111] permitting the U.S. Trustee to appoint one or more trustees as it deemed appropriate. On December 24, 2008, the U.S. Trustee selected Kelley to serve as the Chapter 11 trustee for all Petters Debtors [Petters Bankr. Docket No. 114]. Ritchie objected to the appointment, arguing that Kelley was disqualified from serving as trustee due to conflicts of interest. In preparation for the hearing on its objection, Ritchie filed an expedited motion to

---

[4] The Receivership Order authorizes the Receiver to perform
> all incidental acts that the Receiver deems to be advisable or necessary; including but not limited to filing any bankruptcy petitions for any of the entities to protect and preserve the assets of any of the entities. Any bankruptcy cases so commenced by the Receiver shall during their pendency be governed by and administered pursuant to the requirements of the United States Bankruptcy Code, 11 U.S.C. section 101 et seq., and the applicable Federal Rules of Bankruptcy Procedure.

Receivership Order at 15.

[5] Ritchie's motion requested the appointment of separate trustees for PCI and PGW. [Petters Bankr. Dockent No. 79].

compel discovery [Petters Bankr. Docket No. 131], seeking to require Kelley to provide discovery responses and appear for a deposition prior to the hearing on the objection.  The bankruptcy court denied the motion [Petters Bankr. Docket No. 135].  Ritchie did not appeal the denial of the discovery motion.  See Notice of Appeal, March 9, 2009 [Petters Bankr. Docket No. 158] at 1 (indicating only that Ritchie appeals from the order overruling the objection to the appointment of the Trustee).

On February 26, 2009, the bankruptcy court overruled Ritchie's objection to the appointment of Kelley as trustee for PCI and PGW.  This appeal follows.

### III.  JURISDICTION

The U.S. District Court has jurisdiction to hear appeals from final judgments and orders of the bankruptcy court.  28 U.S.C. § 158(a)(1).  The "test for finality in bankruptcy orders is more flexible and liberal than that for general civil proceedings."  FL Receivables Trust v. Gilbertson Restraurants, L.L.C. (In re Gilbertson Restaurants), 315 B.R. 845, 848 (8th Cir. B.A.P. 2004) (citing Yukon Energy Corp. v. Brandon Investments, Inc. (In re Yukon Energy Corp.), 138 F.3d 1254, 1258 (8th Cir. 1998)).  However, even in complex bankruptcy cases, an order is not final "unless it finally resolves a discrete segment of that proceeding, that is, a relevant judicial unit of the proceeding."  In re Farmland Industries, Inc., 397 F.3d 647, 650 (8th Cir. 2005) (citations and quotations omitted).

In determining whether a bankruptcy court order is final, the reviewing court must consider the extent to which (1) the order leaves the bankruptcy court with nothing to do but execute the order; (2) the delay in obtaining review would prevent the aggrieved party from obtaining effective relief; and (3) a later reversal on the issue would require recommencement of

the entire proceeding. In re M&S Grading, Inc., 526 F.3d 363, 368 (8th Cir. 2008) ("M&S Grading I").

Most courts consider an order granting or denying appointment of a trustee to be final and appealable. See In re Adelphia Comm'ns Corp., 333 B.R. 649, 657, n.41 (S.D.N.Y. 2005) (citing numerous decisions where courts have determined orders appointing trustees to be final or have reviewed such orders without discussion as to finality); In re AFI Holding, Inc., 530 F.3d 832, 836-37 (9th Cir. 2008). But see In re Cash Currency Exch., Inc., 762 F.2d 542, 548 (7th Cir. 1985) (determining without discussion that an order appointing a trustee was interlocutory).

While the Eighth Circuit has not ruled on the finality of an order granting or denying the appointment of a trustee, it has reviewed an order denying a motion to remove a bankruptcy trustee. See In re M&S Grading, Inc., 541 F.3d 859, 867 (8th Cir. 2008) ("M&S Grading II") (reviewing and affirming bankruptcy court's denial of motion to remove trustee). Other courts have also reviewed orders declining to remove a trustee without discussing whether such orders were final. See In re O.P.M. Leasing Services, Inc., 16 B.R. 932, 937-41 (Bankr. D. N.Y. 1982); In re Int'l Oil Co., 427 F.2d 186, 187 (2d Cir. 1970). The Trustee Order in this case is equivalent to an order denying a motion to remove a bankruptcy trustee, because it allowed the appointed trustee to remain in place. Given the recent Eighth Circuit precedent of M&S Grading II and the review of similar trustee orders in other courts, this Court will consider the bankruptcy court's Order overruling Ritchie's objection to be a final, appealable order.[6]

---

[6] Whether the finality analysis factors are satisfied in this case is questionable. The first factor, the extent to which the order leaves the bankruptcy court with nothing to do but execute the order, weighs against Ritchie in that after the Trustee Order is executed, challenges to

## IV.  STANDARD OF REVIEW

A district court reviews a "bankruptcy court's factual findings for clear error and its conclusions of law de novo." M&S Grading I, 526 F.3d at 367.  "The decision to deny a motion to remove a trustee is reviewed for an abuse of discretion.  The bankruptcy court abuses its discretion when it fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous." Reagan v. Wetzell (In re Reagan), 403 B.R. 614, 620 (8th Cir. B.A.P. 2009) (citing M&S Grading II., 541 F.3d at 867).

---

Kelley's status as trustee remain open for adjudication.  The Trustee Order specifically states that Bankruptcy Rule 2009(d) allows Ritchie to renew its objection to the appointment of Kelley as trustee as new facts may warrant. Trustee Order at 32-33.  Thus, the issue of Kelley's lack of disinterestedness is an ongoing inquiry and depends upon future and as yet unknowable events as the Petters Debtors' bankruptcy cases progress.  See In re Gilbertson Restaurants, 315 B.R. at 848-49 (finding that the first finality factor was not met because the bankruptcy court's order "expressly left open the possibility of future review").  Moreover, Ritchie's objection to Kelley's appointment is not the only angle of attack in Ritchie's battle to remove Kelley as trustee.  Ritchie also called a special meeting of creditors under 11 U.S.C §1104(b)(1) for purposes of voting in a new trustee [Petters Bankr. Docket No. 186], and has objected [Petters Bankr. Docket No. 221] to the U.S. Trustee's report of the election results [Petters Bankr. Docket No. 218], which did not result in the outcome Ritchie was seeking.  Ritchie's objection to the election results is currently under advisement with the bankruptcy court.  Despite the pendency of that decision and this appeal, Ritchie has also moved to convert the Petters Debtors' cases to Chapter 7 for cause [Petters Bankr. Docket No. 226], arguing that Kelley's lack of disinterestedness constitutes cause for conversion.  Clearly, on the issue of Kelley's status as trustee, the bankruptcy court has much to do beyond executing the Trustee Order.
    The second factor, whether delay in obtaining review would prevent the aggrieved party from obtaining relief, also bodes against Ritchie.  As just observed, Ritchie's requested relief – the removal of Kelley as trustee – is under continued review on several fronts.
    The third finality factor, the extent to which a later reversal would require recommencement of the entire proceeding, also disfavors Ritchie due to the nature of the bankruptcy process.  Bankruptcy court approval is required for administrative acts that affect the substantive rights of creditors.  See Trustee Order at 33 (citing examples of acts requiring bankruptcy court approval).  The approval process gives Ritchie an ongoing opportunity to oppose actions by Kelley that Ritchie feels are not being made in a disinterested fashion, and prevents recommencement of the entire bankruptcy proceeding.

## V.  DISCUSSION

Ritchie argues that the bankruptcy court erred in determining that Kelley's status as receiver, as well as his roles as trustee for both the PCI and PGW bankruptcy estates, posed no conflicts of interest that warranted disqualifying Kelley from serving as trustee for each of the Petters Debtors.

### A.  Standard for Trustee Disqualification

#### 1.  Disinterestedness

The Bankruptcy Code requires a Chapter 11 Trustee appointed post-petition in a bankruptcy case to be a "disinterested person."  11 U.S.C. § 1104(d).  In turn, a "disinterested person" is defined in pertinent part as a person who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."  11 U.S.C. § 101(14)(C).

Courts have interpreted this definition to apply only to personal interests of the trustee and not to the interests attributed to a trustee in his or her representative or fiduciary capacity. In re O.P.M. Leasing, 16 B.R. at 938 (determining that "it is 'personal interests' that are forbidden"); In re BH & P, Inc., 942 F.2d 1300, 1310 (3d Cir. 1991) (observing that the definition of "disinterested person" implicates only the personal interests of the trustee); In re Freeport Italian Bakery, Inc., 340 F.2d 50, 54 (2d Cir. 1956) (stating that "[g]rounds for disapproval or removal of a trustee in bankruptcy are not to be found in his formal relationships").  Accordingly, "[m]ost of the cases which have addressed the removal of a trustee do not rely on . . . any analysis of the disinterest requirement but approach the issue instead in

9

terms of whether there is a 'conflict of interest' which constitutes cause for removal. In most of these cases, something beyond a lack of disinterest is required." In re BH & P, 942 F.2d at 1311.

### 2. Case-by-Case Determination of "Cause" for Removal

Section 324(a) of the Bankruptcy Code permits a court to "remove a trustee, other than the United States trustee, or an examiner, for cause." 11 U.S.C. § 324(a). "Cause for removal of an appointed . . . trustee under § 324(a) is not susceptible to sharp definition, but is determined on a case-by-case, totality-of-circumstances approach, subject to the bankruptcy court's broad discretion." In re AFI Holding, 530 F.3d at 852. Removal "is an extreme remedy and some courts have construed it to require the moving party to prove actual injury or fraud." In re Reagan, 403 B.R. at 623.

Most courts eschew a per se rule of whether a conflict of interest amounts to "cause" under 11 U.S.C. § 324, and instead favor a case by case analysis. See, e.g., In re BH & P, 949 F.2d at 1312-13 (rejecting as overbroad an approach which automatically disqualifies a trustee from serving in jointly administered estates with cross running claims, and also declining to apply a standard requiring actual injury to the estate to be shown before a trustee can be removed); In re AFI Holding, 530 F.3d at 848-49 (finding the determination of whether an interest is "materially adverse" to be an "objective and fact-driven" inquiry that requires a court to apply a totality-of-circumstances analysis).

#### a. Trustee and Receiver Roles Not Materially Adverse

Ritchie asserts that Kelley's role as receiver predisposes him to favor a forfeiture action, which directly conflicts with the interests of the PGW bankruptcy estate. App.'s Opening Brief [Case No. 09-cv-680 ("Appellate Case") Docket No. 6] ("Ritchie Brief") at 19.

The bankruptcy court properly looked to the Receivership Order and Kelley's designated duties to determine whether Kelley's status as receiver[7] constitutes a materially adverse interest which would disqualify Kelley from serving as trustee. See 13 Moore's Federal Practice ¶ 66.03[2] (3d ed. 2007) ("The district court that appoints the receiver establishes the extent of the receiver's authority"). The Receivership Order directs Kelley to "[c]oordinate with representatives of the United States Attorney's office and Court personnel as needed to ensure that any assets subject to the terms of this Order are available for criminal restitution, forfeiture or other legal remedies in proceedings commenced by or on behalf of the United States." Receivership Order at 16-17. The bankruptcy court correctly determined that this provision "did not vest [Kelley] with any interest aligned with the United States, nor mandate any action on his part that would make him its servant, agent, or ally." Trustee Order at 23. Instead, the duty to coordinate requires Kelley

> to "hold in place," to keep the assets secure pending their ultimate disposition via separate court proceedings.
>
> There is nothing more than that to be read into the duty to "coordinate" with the United States Attorney. The verb here is not loaded with any meaning suggestive of a current, joint action towards government seizure. The notion of having the assets in Kelley's hands "available for criminal restitution, forfeiture," and

---

[7] Kelley's status as receiver remains in full effect as to the Petters Debtors. The bankruptcy court correctly rejected the arguments of the U.S. Trustee and the Unsecured Creditors' Committee that Kelley's role as receiver somehow terminated when the Petters Debtors filed their bankruptcy petitions. Nothing in the Receivership Order or the Bankruptcy Code supports this proposition, and the Bankruptcy Code's definition of estate property supports the opposite result. See 11 U.S.C. § 541(a)(1) (establishing the general rule that property of the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."). Property of the Petters Debtors' estates consists of property subject to the Receivership directed by Kelley. As receiver, Kelley must adhere to the mandates of the bankruptcy forum for which he opted, but remains the receiver nevertheless.

> the like signifies a duty to fully disclose their form and whereabouts and to maintain current liquidity, but only that. This reflects the transparency that our legal system makes incumbent on any entrusted officer of a court, in the performance of obligations *to the appointing court*. It reflects no more than that.

Id. at 22.

Accordingly, Kelley's dual roles as receiver and trustee do not give rise to a materially adverse interest that would disqualify him from serving as trustee for the Petters Debtors.

### b.  No Present Justification for Multiple Trustees

Ritchie urges that the disparity among PGW and PCI's assets, together with the different creditor constituencies of those entities and the cross-running claims among the estates, result in conflicts of interest among PGW and PCI and requires separate trustees for each.  Ritchie Brief at 14.  Specifically, Ritchie asserts that "PCI has no assets, and thus must seek to access PGW's substantial assets to the benefit of its creditors."  [Appellate Case Docket No. 21] ("Ritchie Reply Brief") at 1.  Ritchie maintains that the existence of cross-running claims among PCI and PGW, as well as the threat of substantial consolidation, result in an actual or potential conflict requiring the appointment of separate trustees.  Ritchie Brief at 14.

The prevailing case law, however, is that potential conflicts between estates do not invariably mandate the appointment of separate trustees.  Conflicts of interest posed by inter-company claims commonly occur in jointly administered cases and are often not "sufficient to saddle [bankruptcy] estates with the expense of separate trustees and trustees' attorneys."  In re O.P.M. Leasing, 16 B.R. at 939 (citing In re Int'l Oil, 427 F.2d at 187); see also In re BH & P, 949 F.2d at 1310-11 (noting that "[j]oint administration by a single trustee is commonplace in the scheme of bankruptcy administration and its positives often outweigh any negatives").

12

This view is adopted in Bankruptcy Rule 2009(c)(2), which permits the appointment of a single Chapter 11 trustee for jointly administered bankruptcy estates as a means of promoting economy and expedience.  When cases are jointly administered, the conflict of interests among the estates' creditors "is not sufficiently serious or frequent in most cases to warrant the selection of separate trustees." Advisory Committee Notes to Fed. R. Bankr. P. 2009.

The Bankruptcy Rules also address situations where potential conflicts materialize as jointly administered cases progress.  Bankruptcy Rule 2009(d) allows for the appointment of separate trustees "[o]n a showing that creditors or equity security holders of the different estates will be prejudiced by conflicts of interest of a common trustee."  This rule "requires the court to make a preliminarily evaluation of the risks of conflict of interest.  If after the . . . appointment of a common trustee a conflict of interest materializes, the court must take appropriate action to deal with it."  Advisory Committee Notes to Fed. R. Bankr. P. 2009.  The "predicate for application of Rule 2009(d) is not that a common trustee [lacks disinterestedness] but that prejudice will occur as a result of the trustee's dual representation."  In re BH & P, 949 F.2d at 1311, n.9 (quotations omitted).  Thus, potential conflicts among jointly administered bankruptcy estates do not require the appointment of separate trustees in every instance.

Instead, whether a single trustee in jointly administered bankruptcy estates with inter-debtor claims has a materially adverse interest requires a case-by-case evaluation of the "full panoply of events and elements."  AFI Holding, 530 F.3d at 848 (quoting In re BH & P, 949 F.2d at 1312-13).  Each case "must be judged in the perspective of the particular case and the facts presented."  Id. at 847 (quoting 3 Collier on Bankruptcy ¶ 327.04[2][a][I], at 327-35 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006)).

13

> What counts is that the matter not be left either to hindsight or the unfettered desires of the [parties involved], but that the bankruptcy judge be given an immediate opportunity to make an intelligent appraisal of the situation and to apply his experience, common sense, and knowledge of the particular proceeding to the request . . . .
>
> Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters, and in regard to the terms and conditions of the engagement of professionals. The bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails.

In re BH&P, 949 F.2d at 1313 (alteration in the original) (quotation omitted).

Here, Judge Kishel correctly focused on the specific facts and circumstances of these bankruptcy cases, finding that

> the characteristics of these cases and their backdrop cannot be ignored: multiple pending, major criminal prosecutions against key management personnel of the Debtors; the sheer magnitude of the sums of money in question; the present indeterminacy of what happened to build and then fell the edifice of Tom Petters's enterprise; and the large complexities that must be coordinated to responsibly propel bankruptcy procedures forward. These circumstances powerfully support the concentration of attention and effort into one fiduciary steward, at this time and for a while to come. Kelley has gone up an immensely steep learning curve in the last five months; he has had to amass knowledge, and analyze it with his professional persons; he is making use of that to recover assets, via legal proceedings and otherwise.

Trustee Order at 31.

This Court finds no abuse of discretion in the bankruptcy court's judgment call that, at this time under the particular facts and circumstances of these cases, separate trustees for PCI and PGW are not warranted. Appointing a second trustee, who almost certainly would hire a second team of attorneys and financial analysts, would result in duplicative efforts, significant

additional transactional expenses, and delay. Id. at 31. For now and likely the next year or more, the trustee's focus will be on recovering and liquidating assets and determining the legal status of encumberances against the bankruptcy estates. Id. at 32. "The Ritchie Parties have not identified any aspect of these tasks . . . that would present a trustee with cross-running allegiances." Id.

The bankruptcy court properly engaged in a case-specific analysis and concluded that at this stage of the bankruptcy proceedings, the present, palpable, and substantial benefits of economy and efficiency prevail over concerns of future, abstract, and unripened conflicts that have yet to or may not materialize. If such conflicts come to fruition, they will be resolved as appropriate, in conformance with Bankruptcy Rule 2009(d). "It is only at this later time that the alleged conflict will reveal itself as real or merely apparent and imaginary. To act earlier in a preemptive manner could result in confusion and interruption of the orderly administration of the . . . bankruptcy proceedings and cause them to incur unnecessary great expense." In re O.P.M. Leasing, 16 B.R. at 939.

In sum, the bankruptcy court did not abuse its discretion in finding that, under the present facts and circumstances, Kelley's roles as receiver and as trustee for both PCI and PGW do not give rise to a conflict of interest, either standing alone or cumulatively, sufficient to justify the appointment of a trustee other than Kelley or separate trustees for the Petters Debtors.

**B.  Discovery  Motion Properly Denied**[8]

Discovery orders are reviewed for an abuse of discretion, and the court is allowed "great latitude" in discovery matters.  Pleasants v. Am. Express Co., 541 F.3d 853, 859 (8th Cir. 2008) (citing Executive Air Taxi Corp. v. City of Bismark, 518 F.3d 562, 570 (8th Cir. 2008)).  The bankruptcy court determined that the factual matter sought by Ritchie's discovery request was overbroad and was "not calculated to lead to the discovery of relevant evidence."  Transcript of Jan. 22, 2009 Proceedings [Bankr. Docket No. 176] at 48.  The bankruptcy court determined that the Receivership Order defines Kelley's duties as receiver and thus serves as the relevant source for determining whether Kelley's duties as receiver conflict with the duties of a trustee.  Id. at 43-44.  The bankruptcy court further reasoned that "whether creditors of the different estates 'will be prejudiced' by conflicts of interest of a common trustee . . . [is] something that also can be measured by the content of statements in schedules and other documents that are available of

---

[8] Ritchie's Notice of Appeal [Petters Bankr. Docket No. 158] included Ritchie's appeal of the Trustee Order, but did not specify the bankruptcy court's Order denying discovery [Petters Bankr. Docket No. 135] ("the Discovery Order").  However, Ritchie included the bankruptcy court's denial of discovery in its Statement of Issues to be Presented on Appeal ("Statement of Issues) [Petters Bankr. Docket 170].  Ritchie's omission of the Discovery Order from the Notice of Appeal does not prevent this Court from reviewing the Discovery Order.  The Discovery Order is closely intertwined with and preliminary to the Trustee Order.  As a general rule, earlier interlocutory orders merge into final orders for the purposes of appeal.  McBride v. Citgo Petroleum Corp., 281 F.3d 1099, 1104 (10th Cir. 2002); accord Greer v. St. Louis Regional Med. Ctr., 258 F.3d 843, 846 (8th Cir. 2001) (finding that a notice of appeal specifying the final judgment should be understood to include all previous rulings leading up to the judgment).  While this rule is usually applied to final judgments in non-bankruptcy cases, the rationale can be reasonably extended to final orders in bankruptcy cases.  Moreover, "the rules specifying the contents of notices of appeal should not "be interpreted *strictissimi juris* . . . where the appellee shows no prejudice."  Greer, 258 F.3d at 846.  The appellees here are not prejudiced, because Ritchie noticed the discovery issue in its Statement of Issues, and because the appellees prevail on the merits of the discovery issue.

public record." Id. at 46.  Thus, the bankruptcy court did not abuse its discretion by denying Ritchie's discovery request as overbroad and irrelevant.

## VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the bankruptcy court's Order Overruling the Objection of Ritchie to Appointment of Trustee in Chapter 11 Cases, and Approving Appointment [Bankr. 08-45257, Docket. No. 153] is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: September 8, 2009.